### THE SEA KING.

(District Court, D. Massachusetts. November 18, 1919.)

No. 1640.

1. **Witnesses ⊕317 (2) —Intentional falsity weakens testimony.**
    In a suit for injuries to a barge, a showing by the official weather reports that the testimony of the master of the barge as to weather conditions was utterly incorrect greatly weakened his testimony, where the error could hardly have been unintentional.

2. **Towage ⊕15 (2) —Tug held not at fault for collision of tow with submerged obstacle.**
    In a suit against a tug for damages to a barge from collision with a submerged obstacle, evidence *held* to show that the tug followed the usual and proper course, and did not, as claimed, take a course too far inshore, and that it was not at fault.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Towage ⊛⇒11 (1)—Libelants must prove injuries to barge were due to tug's negligence.**

A tug is not an insurer of the tow, and to recover for damages to the tow it must be proved that they were caused by negligence on the tug's part.

In Admiralty. Libel by Walter C. Baylies and others against the steam towboat Sea King. Libel dismissed.

Gaston, Snow & Saltonstall, of Boston, Mass., for libelants.
Frederick Foster, of Boston, Mass., for claimant.

MORTON, District Julge. There is no doubt that the barge Annie struck some obstacle, and was pulled over it on the way up the coast, and was more or less injured thereby. The question is whether the tug was at fault for the accident. That depends on where and how the injury occurred.

[1, 2] Olson, master of the barge, testifies that the tow put to sea in threatening weather and a strong northerly wind; that the tug took a course near the shore, in order to get the protection of the land; that she went almost into Assateague harbor, and then headed off shore; and that the stranding occurred on the way out, on the shoals near that point. The details of the course as given by Olson are improbable, and his statements as to the weather are shown by the official weather reports to be utterly incorrect. The latter error can hardly have been unintentional, and greatly weakens his testimony.

Capt. Moon, of the tug, testifies that the weather was fine and he took the usual course up the coast; that he went direct from Cape Charles Lightship to Black Fish Bank buoy, and did not hug the shore, nor run in towards Assateague; that at a point about two miles east of Black Fish buoy he heard a danger signal from the Annie and noticed that something greatly reduced the speed of the tow for several minutes, after which it went on all right; that the chart showed everywhere in that vicinity plenty of water for vessels of the draft of this barge.

Only one other witness testified, the engineer of the barge, and his evidence throws little or no light on the place or cause of the accident.

Olson sounded around the barge while she was being pulled clear, and, except in one spot, near amidships on her port side, got everywhere water enough to float her. Her injuries were confined to the port side of the bottom. Neither of the two following barges, which drew slightly less than the Annie, touched at all. Although they did not pass over the exact spot where she hit, they must have gone pretty near it.

It is evident that whatever the Annie struck was not of large area. If it was an unmarked sunken wreck, as the claimant suggests, the tug clearly was not at fault. In view of the number of wrecks on that coast, the suggestion cannot be dismissed as merely fanciful. It is not disproved; to say the least, by the appearance of the injuries as described by Olson, nor by his account of the behavior of the barge

when she struck. He says that when she was dry-docked he looked at her bottom; that—

"the planks were ruffled upon the port side and the shoe was gone. * * * The starboard side was hardly touched at all. There were some scratches as if sand scratched them; but the port side was ruffled up, the same as you would take something heavy and blunt. It was chewed up like, you know, the plank, and the paint was chafed all along the side."

Describing the accident, he says:

"First she struck, and then it seemed as if she jumped over something—jumped into, jumped over, something. She struck first with one sound, or you could feel it, you know, when she struck; and then it seemed as if she went over something gradually."

The gravamen of the libelant's charge against the tug is that she took a course too far inshore, and towed the barge into waters which, as she ought to have known, were dangerous. The reason given by the libelant to explain why the tug should take an inshore course is shown to be untrue; no reason appears why she should have done so. Her captain testifies that she took the usual and proper course. Upon the evidence, I am not satisfied to the contrary. The evidence fails to establish how or where the accident occurred. No satisfactory conclusion can be reached on either point. The cause of the accident, whether submerged obstacle, sunken wreck, uncharted rock, or known shoal, remains entirely conjectural.

[3] The tug was not an insurer. The libelants, in order to recover, must prove that the injuries to the barge were caused by negligence on the tug's part (The R. B. Little, 215 Fed. 87, 131 C. C. A. 395 [C. C. A. 2d Cir.]); and that they have failed to do.

On all the evidence, I find and rule that fault on the part of the Sea King is not established.

Decree that the libel be dismissed, with costs.